USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/1/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
MAYWEATHER PROMOTIONS, LLC,

                              *Plaintiff*,

                              v.

PAC ENTERTAINMENT WORLDWIDE LLC,

                     *Defendant/Counterclaim-Plaintiff*,

                       and

MAYWEATHER PROMOTIONS, LLC, and
FLOYD MAYWEATHER,

                     *Counterclaim-Defendants*.
-------------------------------------------------------------- X

21-CV-4378

OPINION AND ORDER

**VALERIE CAPRONI, United States District Judge:**

      Defendant/Counterclaim-Plaintiff PAC Entertainment Worldwide LLC ("PAC") has counterclaimed against Mayweather Promotions LLC ("Promotions") and Floyd Mayweather ("Mayweather") (collectively "Promotions")[1] for several claims sounding in breach of contract and quasi-contract arising out of the parties' agreement to co-host a boxing exhibition in Dubai between former professional boxer, Floyd Mayweather, and social media influencer, Logan Paul ("Paul"). *See* Am. Ans., Dkt. 37. Promotions has moved to dismiss the counterclaims in their entirety. *See* Mem. of Law, Dkt. 43. PAC opposes the motion. *See* Pl. Opp., Dkt. 49. For the

---

[1] Floyd Mayweather was not individually involved in this litigation until PAC named him as a defendant in its counterclaim. *See* Am. Ans., Dkt. 37.

1

reasons discussed below, Promotions' motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND[2]

Floyd Mayweather, the founder and president of Mayweather Promotions, LLC, is a former professional boxer and boxing promoter. *See* Am. Ans. at p. 10 ¶¶ 8–10.[3] Logan Paul is a social media influencer who also boxes professionally. *See id.* ¶¶ 11–12. In December of 2020, Mayweather announced that he and Paul would face off in an exhibition boxing match (the "Exhibition"). *See id.* ¶ 13.

On March 21, 2021, PAC and Promotions agreed that PAC would host the Exhibition in Dubai and distribute it in limited territories (the "March 21 Agreement"). *See id.* at p. 11 ¶ 20. In exchange, PAC would pay Promotions at least $110 million on a prescribed payment schedule beginning March 25, 2021, and continuing through May 9, 2021. *See* Compl. ¶ 17, Dkt. 1; Mem. of Law at 4; *id.* Ex. 1 at 7 (March 21 Agreement), Dkt. 43-1.

Pursuant to the March 21 Agreement, PAC was required to pay Promotions $30 million on March 25, 2021. *See* Compl. ¶ 20; March 21 Agreement at 7. When PAC failed to make the March 25 payment, Promotions terminated the March 21 Agreement. *See* Compl. ¶¶ 21–22; Am. Ans. at p. 3 ¶¶ 21–22. After further negotiations, on March 31, 2021, PAC and Promotions executed the "Restated Agreement," which modified the payment schedule that had been established in the March 21 Agreement. Am. Ans. at p. 12 ¶ 22; *see also* Mem. of Law Ex. 2 (Restated Agreement), Dkt. 43-2 ("Rest. Agr."). The Restated Agreement provides that

---

[2] The facts as alleged in the Counterclaim are assumed true for purposes of this opinion.

[3] PAC's Counterclaims begin on page nine of its Amended Answer; the paragraphs of the Counterclaim begin numbering at ¶ 1. *See* Am. Ans. at 9, Dkt. 37. For clarity, when citing to the Amended Answer, this Opinion cites to both the page and the paragraph of the relevant counterclaim allegation(s).

Promotions "may terminate [the Restated] Agreement immediately" for nonpayment.  Rest. Agr. at 10; *see also* Compl. ¶ 27.  Otherwise, the Restated Agreement permitted either party to terminate for a material breach following "written notice" and an opportunity to cure, if the breach was curable, within three days.  Rest. Agr. at 10.  Pursuant to the Restated Agreement, PAC was required, *inter alia*, to pay Promotions $15 million on April 1, $5 million by April 8, and $10 million by April 15.  *Id.* at 7.

Within hours of executing the Restated Agreement, Mayweather threatened to announce that the Exhibition would take place in Miami instead of Dubai unless PAC "immediately wire[d] millions of dollars;" moving the fight to Miami "would effectively terminate the Restated Agreement and cut PAC out of the Exhibition."  Am. Ans. at p. 12 ¶ 23.  When PAC failed to make the required $15 million payment on April 1, *see* Compl. ¶¶ 28–29; Am. Ans. at p. 4 ¶¶ 28–29, Promotions served a demand letter on PAC, Am. Ans. at 12 ¶ 24; PAC made a $5 million payment on April 7, and another $5 million payment on April 9, *id.* at p. 12 ¶¶ 25, 28.  On April 11, after Mayweather again threatened to cancel the Dubai Exhibition, *id.* at p. 12 ¶ 26, PAC and Promotions executed the First Amendment to the Restated Agreement (the "Amendment"), *id.* at p. 13 ¶ 29.  The Amendment provided for, *inter alia*, an additional payment of $10 million on April 14, 2021.  *See id.*; Mem. of Law Ex. 3, Dkt. 43-3 (the Amendment).  The day that PAC and Promotions executed the Amendment, Paul participated in "WrestleMania 37."[4]  *See* Am. Ans. at p. 16 ¶ 55.

On April 13, 2021, one day before PAC was obligated to pay Promotions $10 million, Mayweather demanded that PAC make the $10 million payment immediately.  *See id.* at p. 13 ¶

---

[4] Both the Agreement and the Restated Agreement provided: "Promotions shall impose industry-standard restrictions on Mayweather and Paul with regard to physical activity that would pose an unreasonable risk of physical injury or death, except for training, sparring, or boxing."  March 21 Agreement at 12; Rest. Agr. at 13.

30. When PAC insisted that it was in compliance with the payment schedule and would continue to follow the schedule established in the Amendment, Mayweather sent repeated text messages to PAC stating: "I'm done." *See id*. at p. 13 ¶ 31. At the time of Mayweather's texts, PAC had already spent approximately $2 million in vendor deposits and related expenses and had paid $10 million to Promotions. *See id*. at p. 13 ¶¶ 33–34. PAC demanded that Promotions return the $10 million; Promotions refused. *Id*. ¶ 34.

As early as April 21, 2021, reports began to surface that the Exhibition would take place in Miami. *See id*. at pp. 13–14 ¶ 36; Opp. at 7. On April 22, 2021, an associate of PAC saw a poster advertising the Exhibition in Miami; that same day, a "Mayweather associate" told PAC that Mayweather never intended to abide by the terms of the Amendment. Am. Ans. at p. 14 ¶ 37. On April 27, 2021, Promotions announced that the Exhibition would take place in Miami on June 6, 2021. *Id*. ¶ 39. On May 13, 2021, Promotions sent PAC a termination notice, *id*. ¶ 40; and on May 14, 2021, Promotions sued PAC for breach of contract, *id*.; *see generally* Compl.

On August 11, 2021, PAC answered and counterclaimed against Promotions for anticipatory breach of contract, wrongful termination, and breach of contract, and counterclaimed against Promotions and Mayweather individually for breach of the implied covenant of good faith and fair dealing, fraud, unjust enrichment, monies had and received, constructive trust, and promissory estoppel. *See* Ans., Dkt. 34; Am. Ans.

On September 24, 2021, Promotions and Mayweather moved to dismiss all counterclaims pursuant to Rule 12(b)(6). *See* Mot., Dkt. 42; Mem. of Law. PAC filed its opposition brief on October 29, 2021, *see* Opp., in which it withdrew its promissory estoppel claim against Promotions and its breach of the implied covenant of good faith and fair dealing and monies had

4

and received claims against both Promotions and Mayweather, *see id.* at 23 n.3. Promotions filed a reply on November 17, 2021. *See* Reply, Dkt. 51.

## DISCUSSION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).

The Court accepts all factual allegations in the counterclaim as true and draws all reasonable inferences in the light most favorable to the counterclaim plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013). The Court is not required, however, "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

**I.   Anticipatory Breach of Contract**

Anticipatory breach "occurs when, before the time for performance has arisen, a party to a contract declares his intention not to fulfill a contractual duty." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citations omitted). "For a statement to constitute an anticipatory breach, the announcement of an intention not to perform must be positive and unequivocal." *In re Asia Glob. Crossing, Ltd.*, 326 B.R. 240, 249 (Bankr. S.D.N.Y. 2005), *rev'd on other grounds*, 404 B.R. 335 (S.D.N.Y. 2009) (cleaned up) (citations omitted); *see also DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 112 (2d Cir. 2010) (holding that "a repudiation

can be determined to have occurred only when" it is positive and unequivocal). To survive a motion to dismiss, the non-breaching party must also allege that it was "ready, willing[,] and able" to perform its obligations under the contract at the time of the alleged repudiation. *See In re Asia*, 326 B.R. at 250; *Ricatto v. M3 Innovations Unlimited, Inc.*, 2019 WL 6681558, at *8 (S.D.N.Y. Dec. 6, 2019).

PAC alleges that Promotions anticipatorily breached the parties' agreement when Mayweather repeatedly texted "I'm done" to PAC. Am. Ans. at p. 15 ¶ 44. Promotions and Mayweather moved for dismissal arguing: (1) the alleged repudiation was not positive and unequivocal; (2) PAC does not allege that it was ready, willing, and able to perform; and (3) the claim is duplicative of PAC's breach of contract claim. *See* Mem. of Law at 8–12.

### A.     PAC Has Plausibly Alleged a Positive and Unequivocal Repudiation

"Generally, the issue of repudiation . . . is an issue of fact," but where the alleged repudiation is in writing, and the written expression is clear and unambiguous, the determination of repudiation can be made as a matter of law. *DiFolco*, 622 F.3d at 112 (internal quotations and citations omitted). By contrast, if the writing's terms are ambiguous, then the issue is for a finder of fact to decide. *See id.* (finding ambiguous plaintiff's email to her employer stating that she wished to "discuss [her] exit" and to give Defendant "ample time to replace [her]" because "these statements can be taken as indicative of her desire to get out from under the direction of the people with whom she had problems rather than leaving [the company] altogether").

PAC alleges that Promotions repudiated the Agreement when Mayweather repeatedly threatened to announce that the Exhibition would take place in Miami instead of Dubai, *see* Opp. at 5, demanded payment in advance of its due date, and texted PAC "I'm done" one day before the next payment to Promotions was due, and fifty-four days before the Exhibition was

scheduled to occur, *see* Am. Ans. at pp. 12–13 ¶¶ 23–31.  PAC argues that Mayweather's threats coupled with his "I'm done" text messages constitute "more than enough evidence for a jury to determine that Mayweather unequivocally repudiated the Agreement."  Opp. at 9; *see also* Am. Ans. at p. 15 ¶ 44.

Promotions argues that PAC has failed adequately to allege repudiation.  *See* Mem. of Law at 2.  Specifically, Promotions argues that Mayweather's alleged texts and statements could be interpreted in a number of different ways, including that he was "done with this conversation," or "done for the day," and therefore cannot constitute a positive and unequivocal announcement of his refusal to perform.  *Id.* at 10.  Promotions also argues that PAC does not specify to whom Mayweather sent the purported texts, and that such texts would be "inconsistent with the notice requirements of the parties' March 31 Agreement," demonstrating the "incredulity" of PAC's theory that there was a clear and unequivocal repudiation.  *See id*. at 9.  In sum, Promotions argues that Mayweather's communication was "far from 'positive and unequivocal.'"  *Id.*

PAC has adequately alleged repudiation.  Although Mayweather's alleged threats to hold the Exhibition elsewhere would be insufficient on their own, the Court finds that the allegation that Mayweather repeatedly texted PAC "I'm done" in response to PAC's refusal to make a payment before it was due could be viewed by a reasonable factfinder as a clear and unambiguous refusal to perform.[5]  As Promotions itself argued, Mayweather's purported text

---

5   Promotions also argues that PAC cannot claim repudiation because PAC did not provide notice and an opportunity to cure the anticipatory breach as required by the Restated Agreement.  *See* Reply at 4, Dkt. 51.  But, as discussed below, compliance with a contract's notice and cure provisions is excused when "the repudiating party expressly disavow[s] any further duties under the contract at issue, in effect declaring the contract at an end."  *In re Best Payphones, Inc.*, 450 F. App'x 8, 11 (2d Cir. 2011) (citing *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 728 (2d Cir. 1992)).  Because PAC has plausibly alleged anticipatory repudiation, it was excused from providing notice and an opportunity to cure in connection with Promotions' purported breach.

messages could be subject to multiple interpretations, thus creating a question of fact that cannot be decided on a motion to dismiss. *See DiFolco*, 622 F.3d at 112–13. To overcome Promotions' motion to dismiss, PAC need not prove that Mayweather's repudiation was unequivocal; it only needs to allege facts from which a reasonable fact finder could find that it was.[6] Taking PAC's allegations as true, a reasonable fact finder could conclude that Mayweather's repeated threats, followed by the "I'm done" text messages, were a positive and unequivocal repudiation of the contract.

### B. PAC Has Adequately Alleged Readiness to Perform

In addition to alleging repudiation, the non-breaching party must allege that it was "ready, willing[,] and able" to perform its obligations under the contract at the time of the alleged repudiation. *In re Asia*, 326 B.R. at 249; *see also Ricatto*, 2019 WL 6681558, at *8 (dismissing a claim for anticipatory repudiation where the Plaintiff had explicitly "refused to comply with his contractual obligations and was not otherwise willing to perform").[7]

Promotions argues that PAC has not alleged adequately that it was ready, willing, and able to perform its obligations under the contract. *See* Mem. of Law at 11. Promotions argues that PAC's failure to make timely payments under the March 21 and Restated Agreements suggests that PAC was unable to perform. *See id.* Accordingly, Promotions contends that PAC's claim for anticipatory breach should be dismissed. *See id.* at 3, 11.

---

[6] Nor does PAC need to allege precisely to whom Mayweather's text messages were reportedly sent. *See* Mem. of Law at 9. Rule 9(b)'s heightened pleading standard applies only to claims of fraud, not anticipatory breach. *See* Fed. R. Civ. Pro. 9(b). PAC's allegations that Mayweather's texts were sent to PAC are adequate at this stage of the litigation.

[7] PAC argues that a non-repudiating party need not prove its ability to perform in the event of a repudiation. *See* Opp. at 11–12. Although some cases excuse the non-repudiating party from having to plead ability to perform, "these authorities . . . do not accurately reflect the law of New York . . . ." *In re Asia*, 379 B.R. at 497. In any event, the Court need not decide this issue because it finds that PAC has adequately alleged readiness to perform.

PAC alleges in its counterclaim that it told Mayweather on April 13 that it "would be making the required payments consistent with the payment schedule set forth in the Amendment." Am. Ans. at pp. 13, 15 ¶¶ 31, 45. PAC thus argues that it has adequately alleged that it was ready, willing, and able to perform. *See* Opp. at 11.

Although not a model of drafting, PAC's Counterclaim adequately alleges readiness to perform.[8] Prior to the alleged repudiation, PAC had already paid Promotions $10 million pursuant to the Amended Agreement. *See* Am. Ans. at p. 12 ¶¶ 25, 28; Compl. ¶ 34. PAC had also confirmed that it was ready to make the required payments consistent with the payment schedule set forth in the Amendment. These allegations are sufficient at this stage to allege readiness to perform.[9] The fact that PAC had a history of untimely payments under the March 21 and Restated Agreements does not bear on whether PAC adequately alleged that it was ready, willing, and able to perform when it received the "I'm done" text messages.

In short, PAC has alleged sufficiently that (1) Mayweather's conduct constituted a clear and unequivocal repudiation of the Agreement, and (2) PAC was ready, willing, and able to

---

[8] There is a difference between alleging that PAC told Mayweather that it was prepared to make the payments as required and alleging that, in fact, PAC was able to and was going to make the payments as required. Although not the basis for Promotions' motion to dismiss, given PAC's arguments in response to the motion, the Court views this distinction as simply inartful drafting. At trial (or on summary judgment) PAC will, of course, have to prove that it had the ability to and was prepared to make the payment that was due on April 14, 2021, not just that it told Mayweather that it would.

[9] Promotions also argues that PAC's anticipatory breach claim is duplicative of PAC's breach of contract claim. *See* Mem. of Law. at 11–12. As discussed below, the Court finds the reverse to be true — to the extent that PAC's breach of contract claim is based on Mayweather's purported repudiation, PAC's breach of contract claim is dismissed as duplicative.

perform at the time of the alleged repudiation. Because PAC has plausibly stated a claim for anticipatory breach, Promotions' motion to dismiss is denied.[10]

## II. Breach of Contract

Under New York law, to allege breach of contract the plaintiff must allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (citation omitted). PAC's breach of contract claim rests on two separate alleged breaches: (1) Promotions' refusal to proceed with the Exhibition in Dubai and (2) Paul's participation in Wrestlemania. *See* Am. Ans. at p. 16 ¶¶ 51–57; Opp. at 15. The Court grants the motion to dismiss with respect to Promotions' refusal to proceed with the Dubai Exhibition but denies the motion as it relates to Paul's participation in WrestleMania.

### A. Promotions' Refusal to Proceed with the Exhibition in Dubai

PAC concedes that "[its] breach of contract counterclaim is premised on" the same facts as its anticipatory breach claim — i.e., "Mayweather's repudiation of the Agreement on April 13, 2021." Opp. at 13. Because this claim is entirely duplicative of the anticipatory breach claim, it is subject to dismissal. *See, e.g.*, *Safka Holdings LLC v. iPlay, Inc.*, 42 F. Supp. 3d 488, 491–92 (S.D.N.Y. 2013) (dismissing a breach of contract claim as "entirely duplicative" of a claim for anticipatory breach); *Waite v. Schoenbach*, 2010 WL 4456955, at *7 (S.D.N.Y. Oct. 29, 2010)

---

[10] Promotions argues separately that PAC's anticipatory breach claim is inconsistent with PAC's claim that Paul's participation in WrestleMania, which occurred two days prior to Mayweather's purported repudiation, constituted a material breach of the Agreement, because an anticipatory breach cannot be committed by a party already alleged to be in material breach of an executory contract. *See* Mem. of Law at 12 n.7 (citing *Mr. Olympia, LLC v. Ultimate Nutrition, Inc.*, 2018 WL 1322201, at *4 (S.D.N.Y. Mar. 13, 2018)). On a motion to dismiss, "when drawing all inferences in favor of the nonmoving party, Rule 8(d) offers sufficient latitude to construe separate allegations in a complaint as alternative theories." *Dresser-Rand Co. v. Ingersoll Rand Co.*, 2019 WL 1434575, at *7 (S.D.N.Y. Mar. 29, 2019) (citing *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999)) (internal quotation marks omitted).

(dismissing an anticipatory repudiation claim that was "identical to the breach of contract claim").

Even if this claim were not duplicative of PAC's anticipatory breach claim, it is nonetheless precluded by PAC's decision to treat Mayweather's repudiation as an anticipatory breach. When confronted with an anticipatory repudiation, the non-repudiating party may "(a) elect to treat the repudiation as an anticipatory breach and seek damages for breach of contract, thereby terminating the contractual relation between the parties, or (b) he may continue to treat the contract as valid and await the designated time for performance before bringing suit." *Lucente*, 310 F.3d at 258 (citations omitted). But the non-repudiating party cannot simultaneously "treat the contract as broken and subsisting, for one course of action excludes the other." *Id.* (citing *Inter-Power of New York, Inc. v. Niagara Mohawk Power Corp.*, 259 A.D.2d 932, 933 (3d Dep't 1999) (internal quotation marks omitted).

Here, PAC treated Mayweather's purported text message as a repudiation of the contract and, as it was entitled to do (if in fact there was a repudiation), quit performing. Am. Ans. at p. 13 ¶ 32. PAC thus demonstrated that it elected to treat the contract as broken rather than subsisting, enabling it to plausibly seek damages only under an anticipatory repudiation theory.[11] In sum, PAC's breach-of-contract claim premised on Promotions' refusal to proceed with the Exhibition in Dubai is dismissed because it is precluded by PAC's claim for anticipatory breach.

---

[11] PAC argues that the Court should allow its contract claims to proceed as alternative theories. *See* Pl. Opp. at 12–13 (citing *Dresser-Rand Co.*, 2019 WL 1434575, at *7). But *Dresser-Rand* did not involve an admission by the non-repudiating party that it had ceased performing under the contract. *See* 2019 WL 1434575, at *7. PAC's refusal to perform under the agreement (i.e., its demand for a refund of the $10 million it already paid and its failure to make the April 14 payment) precludes it from being able to prove breach of contract.

### B. Paul's Participation in WrestleMania

PAC's second breach of contract claim is premised on Paul's participation in WrestleMania; PAC alleges that his participation violated the provision in the agreement that required Promotions to ensure that Paul refrained from activities that posed an unreasonable risk of physical injury. *See* Am. Ans. at p. 16 ¶¶ 54–55; Opp. at 15. Promotions argues that this claim should be dismissed because (1) Paul's participation cannot plausibly be understood to violate the parties' agreement; (2) PAC fails to allege that it complied with the agreement's notice and cure provisions; and (3) PAC fails to allege damages. *See* Mem. of Law at 13–15.

The Restated Agreement provides: "Promotions shall impose industry-standard restrictions on Mayweather and Paul with regard to physical activity that would pose an unreasonable risk of physical injury or death, except for training, sparring, or boxing." Rest. Agr. at 13. Promotions argues that Paul's participation in WrestleMania did not pose an unreasonable risk of injury.[12] *See* Mem. of Law at 14. PAC claims, by contrast, that as part of the event "Paul was kicked and thrown over wrestler Kevin Owens' shoulder and slammed onto the mat," Am. Ans. at p. 16 ¶ 55, creating an unreasonable risk of injury, *see* Opp. at 16.

"[T]he question of the materiality of a breach is usually a question of fact and should be decided as a matter of law only where the inferences are certain." *Orlander*, 802 F.3d at 298 (citing *VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 380 (S.D.N.Y. 2014)) (internal quotation marks omitted). Accordingly, the Court need not weigh in on whether Paul's wrestling

---

[12] Promotions included in its brief a link to a YouTube video purportedly of Paul's WrestleMania appearance; Promotions asserts that the video proves that Paul was not at unreasonable risk of injury. Mem. of Law at 14 n.10. While the Court agrees that the throw depicted in the cited YouTube video appears to have been staged, the Court does not agree that the video clip is incorporated into PAC's counterclaim; the Court cannot, therefore, consider it when deciding the motion to dismiss. *See DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (holding that extrinsic documents may only be considered on a motion to dismiss if they "are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint").

bout constituted a material breach. Drawing all inferences in favor of PAC, as the Court must on a motion to dismiss, PAC has plausibly alleged that Paul's participation in Wrestlemania violated the terms of the parties' agreement because it posed an unreasonable risk of physical injury.[13]

Promotions also argues that PAC has not adequately alleged damages. *See* Mem. of Law at 15–16 (citing *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004)). *Nat'l Mkt. Share* discusses what a plaintiff needs to prove to prevail on summary judgment. 392 F.3d at 524. To survive a motion to dismiss, a claimant "need only allege that it was damaged; it is not required to specify the measure of damages nor to plead proof of causation." *Xpedior Creditor Tr. v. Credit Suisse First Bos. (USA) Inc.*, 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004). Because there is no allegation that Paul was, in fact, hurt during his WrestleMania appearance, there is some question as to whether Promotions incurred any actual damages from the breach. Nevertheless, the availability of nominal damages weighs against dismissal. *See Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (holding that a plaintiff alleging speculative damages would still have plausible claims for nominal damages).

In sum, PAC has adequately alleged that Paul's participation in WrestleMania constituted a material breach and has adequately alleged damages. Accordingly, Promotions' motion to dismiss the breach of contract counterclaim premised on Paul's participation in WrestleMania is denied.

---

[13] Promotions' additional argument that PAC was required to comply with the Agreement's Notice and Cure provision defies common sense. *See* Mem. of Law at 13–15. By the time PAC found out about Paul's WrestleMania showdown, it had already happened. *See* Opp. at 16–17. Simply put, it was an incurable breach.

**III.    Fraud**

To allege fraudulent inducement under New York law, the plaintiff must allege "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation . . . ; and (iv) resulting damages." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (citation omitted); *see also Hindsight Sols., LLC v. Citigroup Inc.*, 53 F. Supp. 3d 747, 772 (S.D.N.Y. 2014) (citing *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)). Fraud claims are subject to the heightened pleading requirements of Rule 9(b), which requires the complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); Fed. R. Civ. P. 9(b).

PAC alleges, *inter alia*, that the timing of the announcement of the Miami Exhibition suggests that Mayweather had already been planning to hold the Exhibition in Miami and that negotiations with PAC were "a mere sham to defraud PAC into believing Promotions planned to participate in the Exhibition in Dubai." *See* Am. Ans. at pp. 13–14, 18 ¶¶ 36, 71–72. Promotions, however, correctly points out that PAC has failed to (1) specify a fraudulent statement, (2) identify its speaker, or (3) allege where and when the statement was made. *See* Mem. of Law at 19–20; *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986) (holding that broad allegations that defendants made misrepresentations to plaintiffs lack the particulars required by Rule 9(b)).

PAC argues that it does not need to meet the heightened pleading standard for details that are peculiarly within the defendant's knowledge. *See* Opp. at 21 (citing *Colony at Holbrook, Inc. v. Strata G.C., Inc.*, 928 F. Supp. 1224, 1231 (E.D.N.Y. 1996)). But PAC misses the point

of this exception. PAC is excused from pleading facts or events that it cannot be expected to know, like a defendant's actual state of mind, but PAC is not excused from alleging the statement that it contends was fraudulent, who said it, or where and when the statement was made. *See Luce*, 802 F.2d at 54 ("[A]llegations[] which fail to specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations, lack the 'particulars' required by Rule 9(b)."). These details are not peculiarly within Promotions' knowledge. In any event, the Court finds that PAC's fraud claim is nothing more than an attempt to dress up yet another claim for breach-of-contract in a tort's clothing.

Accordingly, Promotions' motion to dismiss PAC's claim of fraudulent inducement is granted.

## IV. Wrongful Termination and Remaining Quasi-Contract Claims

PAC asserts a claim for "wrongful termination," Am. Ans. at p. 15 ¶ 48, and argues that wrongful termination is a distinct claim from breach of contract. *See* Opp. at 14 (citing *PSEG Power New York, Inc. v. Alberici Constructors, Inc.*, 2006 WL 8452039, at *7 (N.D.N.Y. Feb. 3, 2006)).

A claim for wrongful termination is nothing more than a "sub-species of a breach of contract or in fact a breach of contract itself." *PSEG Power*, 2006 WL 8452039, at *7.[14] The

---

[14] PAC mischaracterizes *PSEG Power* by claiming that it stands for the proposition that wrongful termination is a distinct claim from breach of contract. *See* Opp. at 14. The *PSEG Power* court disallowed the wrongful termination claim because "[t]o add another breach of contract cause of action seeking the same lost profits is redundant, duplicative, and unlikely to be productive." 2006 WL 8452039, at *9. Wrongful termination is merely one way that a contract can be breached; it is not a separate cause of action.

The other cases PAC cites that involve claims for breach of contract and wrongful termination are inapposite here. *See* Opp. at 14–15; *Standard Power, LLC v. Energy*, 2015 WL 4092807, at *2 (N.Y. Sup. Ct. June 29, 2015); *Federated Fire Prot. Sys. Corp. v. 56 Leonard Street, LLC*, 2017 WL 3730531, at *2 (N.Y. Sup. Ct. Aug. 29, 2017). None of those cases directly addressed the issue of whether a wrongful termination claim is duplicative of a breach of contract claim.

15

allegations underpinning PAC's wrongful termination claim are identical to those underpinning PAC's anticipatory breach and breach of contract claims. *See* Am. Ans. at pp. 14–16 ¶¶ 44, 48, 51. Because PAC has separately asserted claims for both anticipatory repudiation and breach of contract, *see id*., PAC's wrongful termination claim is dismissed as duplicative.

PAC's claims for unjust enrichment and constructive trust against Promotions also fail. *See* Am. Ans. at pp. 19–20 ¶¶ 80, 90–91. Unjust enrichment is an equitable remedy that may be awarded in the absence of an enforceable contract. *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 60 (2d Cir. 1997). Where a valid agreement exists, however, "an action . . . to prevent unjust enrichment ordinarily is not available." *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 118 (2d Cir. 2006). It is also "well established that the existence of a contract precludes a claim for a constructive trust." *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 235 (E.D.N.Y. 2013) (citations omitted); *see also Pena v. Guzman*, 2004 WL 253331, at *2 (S.D.N.Y. Feb. 11, 2004) ("In order to establish a claim for constructive trust, the plaintiff must make an allegation that is not merely duplicative of the breach of contract claim but instead must allege . . . distinct harm or actions giving rise to a separate claim for a constructive trust.") (cleaned up). PAC acknowledges that the parties entered into "a valid[,] binding, and enforceable contract," Am. Ans. at 17 ¶ 59, thus precluding both of these claims.

## V. Claims Against Mayweather Individually

Finally, PAC brings claims of fraud, promissory estoppel, unjust enrichment, and constructive trust against Mayweather in his personal capacity. *See* Opp. at 15 n.1, 23 n.3. PAC's fraud claim against Mayweather fails for the same reason that it fails against Promotions — PAC has not alleged any of the particulars of Mayweather's fraud as required by Rule 9(b).

PAC's promissory estoppel and other quasi-contract claims also fail because PAC fails to allege adequately that Mayweather intended to be bound individually by the contract. "It is well-established under New York law that persons may not be held personally liable on contracts of their corporations, provided they did not purport to bind themselves individually under such contracts." *Rapay v. Chernov*, 2017 WL 892372, at *2 (S.D.N.Y. Mar. 6, 2017) (cleaned up). "Put differently, when an officer or director acts on behalf of his or her corporation, he or she may not be held liable for inducing the corporation to violate its contractual obligations unless his or her activity involves separate tortious conduct or results in personal profit." *Id.* (cleaned up).

Courts in this district have applied this limitation to both breach of contract and quasi-contract claims. *See, e.g.*, *Rapay*, 2017 WL 892372, at *2 (dismissing, *inter alia*, breach of contract and quasi-contract claims against defendants in the absence of facts suggesting they intended to bind themselves individually); *Braun v. CMGI, Inc.*, 2001 WL 921170, at *12 (S.D.N.Y. Aug. 14, 2001), *aff'd*, 64 F. App'x 301, 303 (2d Cir. 2003) (granting summary judgment on promissory estoppel claim where there was no clear and explicit evidence of agent's intention to be personally bound); *It's All Good, Inc. v. Int'l Creative Mgmt., Inc.*, 1995 WL 622511, at *3 (S.D.N.Y. Oct. 24, 1995) (dismissing breach of contract and promissory estoppel claims against defendant-agents where the complaint did not allege that they intended to be personally bound).

Here, PAC contracted with Mayweather Promotions, not Floyd Mayweather himself. *See* Rest. Agr. at 1. Although Mayweather is the president of Mayweather Promotions, *see* Am. Ans. at p. 10 ¶ 10, PAC has not alleged any facts to suggest that Mayweather intended to bind himself individually to the parties' agreement. Mayweather's status as president of Promotions does not

17

automatically bind him individually to contracts entered into by Promotions. *See Mason Tenders Dist. Council Welfare Fund v. Van San Const. Corp.*, 2004 WL 1746714, at *4 (S.D.N.Y. Aug. 3, 2004) ("The mere fact of [defendant's] position as president of the corporation is not sufficient to hold him personally liable . . . .").

In short, PAC has not stated a claim for relief against Mayweather for anything. Accordingly, Mayweather's motion to dismiss PAC's counterclaims is granted.

## CONCLUSION

For the foregoing reasons, PAC's counterclaims for wrongful termination, fraud, unjust enrichment, constructive trust, and promissory estoppel are DISMISSED with prejudice for failure to state a claim. All of PAC's counterclaims against Mayweather individually are also DISMISSED with prejudice. Promotions' motion to dismiss PAC's counterclaim for anticipatory breach of contract and breach of contract premised on Paul's participation in WrestleMania is DENIED. The Clerk of Court is respectfully directed to close the open motion at docket entry 42.

**SO ORDERED.**

Date:   **September 1, 2022**
        **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**